Revised September 2, 1998

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

No. 96-31147

---

TEXAS LOTTERY COMMISSION,

Plaintiff-Appellant,

versus

THERESA THANH TRAN,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas

---

August 17, 1998

Before WIENER, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

WIENER, Circuit Judge:

In this bankruptcy case, Plaintiff-Appellant Texas Lottery Commission (the "Commission") appeals the judgment of the district court affirming the bankruptcy court's holding that the Texas Lottery Act does not make lottery ticket sales agents fiduciaries of the state. The effect of that ruling was to prevent the debt of Defendant-Appellee Theresa Than Tran ("Tran") to the Commission from being held to be nondischargeable under § 523(a)(4) of the Bankruptcy Code.[1] Concluding that the bankruptcy court's holding is correct, we affirm.

---

[1]    11 U.S.C. § 523(a)(4) (1994).

# I

## FACTS AND PROCEEDINGS

Tran operated a food store in Houston, Texas known as E.Q.'s Grocery Store.  In May 1992, the Texas Lottery Commission licensed Tran as an agent under the Texas Lottery Act[2] (the "Act") to sell lottery tickets from her store.  The Act provides that the proceeds of the sales of lottery tickets and any unsold tickets "shall be held in trust for the benefit of the state" and imposes specified bookkeeping requirements on ticket sales agents.  The Act does not require a ticket sales agent to maintain a separate bank account for the proceeds of such sales or otherwise to segregate the proceeds of lottery ticket sales from the agent's general funds, and Tran did not do so.  Similarly, the Act does not expressly prohibit an agent from spending lottery ticket proceeds on items not related to the lottery.

Tran and her husband jointly filed a voluntary petition in the bankruptcy court for the Southern District of Texas, seeking protection under the Bankruptcy Code.  The Commission filed an adversary complaint in the bankruptcy proceeding contesting the dischargeability of Tran's debt for ticket sales proceeds not delivered to the Commission.  The Commission argued that Tran was a fiduciary under the Act and that Tran's debt was, therefore, nondischargeable under § 523(a)(4) of the Bankruptcy Code.  Section 523(a)(4) exempts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity."  The bankruptcy court held that, although Tran was obligated to the Commission for $80,000.00 in unpaid lottery ticket receipts, the debt was not excepted from discharge, as a lottery ticket sales agent is not a fiduciary within the meaning of § 523(a)(4).

The Commission appealed to the district court, which affirmed the bankruptcy court's

---

[2]     Tex. Gov't Code Ann. § 466.001 - .409 (Supp. 1998).

2

judgment. The district court reasoned that, although the Act labeled the ticket sales proceeds (and any unsold tickets) a trust fund, the Act does not impose on the ticket sales agent the types of duties required to transform the seemingly typical agency relationship into a fiduciary relationship for the purposes of § 523(a)(4). The district court placed particular emphasis on the fact that the Act does not require a ticket sales agent to segregate lottery proceeds from the agent's other funds. The Commission timely filed a notice of appeal.

II

ANALYSIS

A.    Standard of Review

Although this case has already been reviewed on appeal by the district court, we review the bankruptcy court's findings as though this were an appeal to us from the district court.[3] We thus review de novo the bankruptcy court's legal conclusion —— affirmed by the district court —— that a lottery sales agent is not a fiduciary within the meaning of § 523(a)(4).[4]

B.    Applicable Law

As a general policy, bankruptcy law favors permitting a debtor to discharge his debts, thereby affording him the proverbial "fresh start."[5] This policy admits exceptions, however, one of which is

---

[3]    Bennett v. Bennett (In re Bennett), 989 F.2d 779, 781 (5th Cir 1993).

[4]    Id.

[5]    Lines v. Frederick, 400 U.S. 18, 19, 91 S. Ct. 113, 113-14, 27 L. Ed. 2d 124, 127 (1970) (describing purposes of bankruptcy law to give debtor a "new opportunity in and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'") (citation omitted); Boyle v. Abilene Lumber, Inc. (In re Boyle), 819 F.2d 583, 587 (5th Cir. 1987) ("The general policy of bankruptcy law favors allowing the debtor to discharge debts and to make a fresh start.").

at issue in this appeal. As noted, § 523(a)(4) bars discharge of those obligations a debtor incurs through "fraud or defalcation while acting in a fiduciary capacity."[6] Congress designed the discharge exception to reach "debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's."[7]

Consistent with the principle that exceptions to discharge are to be narrowly construed,[8] the concept of fiduciary under § 523(a)(4) is narrower than it is under the general common law.[9] Under § 523(a)(4), "fiduciary" is limited to instances involving express or technical trusts.[10] The purported trustee's duties must, therefore, arise independent of any contractual obligation.[11] The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong.[12] Constructive trusts or trusts ex malificio thus also fall short of the

---

[6]    11 U.S.C. § 523(a)(4) (Supp. 1998). Although the language of § 523(a)(4) does not track precisely that of its predecessor, 11 U.S.C. § 35(a)(4) (§ 17(a)(4) of the Bankruptcy Act of 1898), repealed and reenacted as amended (by Pub.L. No. 95-598, 92 Stat. 2590 (1978)) at 11 U.S.C. § 253(a)(4), decisions construing the previous section are equally applicable to § 523(a)(4). Boyle, 819 F.2d at 587.

[7]    Boyle, 819 F.2d at 587-88.

[8]    See Angelle v. Reed (In re Angelle), 610 F.2d 1335, 1339 (5th Cir. 1980).

[9]    Id. at 338.

[10]    Chapman v. Forsyth, 2 U.S. (How.) 202, 207, 11 L.Ed. 236, 238 (1844).

[11]    Id.

[12]    Davis v. Aetna Acceptance Co., 293 U.S. 328, 333, 55 S.Ct 151, 154, 79 L.Ed 2d 393, 391-98 (1934).

4

requirements of § 523(a)(4).[13]

Statutory trusts, by contrast, can satisfy the dictates of § 523(a)(4). It is not enough, however, that a statute purports to create a trust: A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms "trust" or "fiduciary." Rather, to meet the requirements of § 523(a)(4), a statutory trust must (1) include a definable res and (2) impose "trust-like" duties.[14]

The question whether a state statute creates the type of fiduciary relationship required under § 523(a)(4) is one of federal law.[15] To make this determination a federal court must nevertheless look to state law —— here, t o the statute purporting to create a fiduciary relationship and to any regulations promulgated in regard thereto[16] —— to discern whether the supposed fiduciary relationship possesses the attributes required under § 523(a)(4),[17] which brings us to the case at hand.

The Act provides, in relevant part, that "[m]oney received by a sales agent from the sales of tickets, less the amount retained for prizes paid by the sales agent or for the agent's commission, if any, together with any unsold tickets, shall be held in trust for the benefit of the state before delivery"

---

[13] Id.

[14] Angelle, 610 F.2d at 1341.

[15] Id.

[16] See Southwest Airlines Co. v. Bullock, 784 S.W.2d 563, 568 (Tx. App. 1990) (holding valid administrative rules promulgated by agency acting within its statutory authority have force and effect of legislation).

[17] Angelle, 610 F.2d at 1341.

5

to the Commission.[18]  Similarly, the Commission's administrative rules provide: "All proceeds from the sale of lottery tickets received by a retailer shall constitute a trust fund until paid to the Texas Lottery . . . . A retailer shall have a fiduciary duty to preserve and account for lottery proceeds."[19] The administrative rules additionally impose on a ticket sales agent a variety of other requirements, the most potentially significant of which relate to accounting and record-keeping.[20]

The Commission contends that the Act and the regulations promulgated thereunder (1) clearly define the trust res as the proceeds of the lottery ticket sales plus any unsold tickets; (2) impose sufficient trust-like duties to make a lottery ticket sales agent a fiduciary under § 523(a)(4); and (3) impose those duties prior to any wrongdoing by the sales agent, thus safely distinguishing the trust relationship under the Act from the non-qualifying trusts ex malificio.[21]

The Commission is correct as to its first contention.  The Act adequately sets forth the putative trust res.  The Commission's two latter and interconnected arguments, however, miss the

---

[18]     Tex. Gov't Code Ann. § 466.353(b) (Supp. 1998).  The Act also states: "If the sales agent is not an individual, each officer, director, or owner of the sales agent is personally liable to the [Texas Lottery Commission] for the full amount of the money or unsold tickets held in trust for the benefit of the state."  Id.

[19]     16 Tex. Admin. Code. Tit. § 401.351 (___).

[20]     The rules, for example, require a sales agent: (1) to file with the Commission reports of the agent's lottery receipts and transactions; (2) sell lottery tickets on a cash basis; (3) restrict sales to those made in-person, to persons who are eighteen years or older and not affiliated with the Commission; (4) make sales only at prescribed locations; (5) pay lottery prizes not exceeding $600.00; (6) provide reasonable security measures for the sale and storage of tickets; (7) and keep on the premises accurate and complete records of all transactions with the Commission.  Id. §§ 401.351 - .363.

[21]     The Commission additionally urges this Court to find that a defalcation occurred.  In light of our conclusion that the Texas Lottery Act did not establish the necessary fiduciary relationship under § 523(a)(4), it is unnecessary to address this issue.

6

mark. The preliminary question —— and the one on which the Commission's argument founders —— is whether the Act imposes sufficient "trust-like" duties on a ticket sales agent. For if the duties required under the Act are not of the kind necessary to create a fiduciary as that term is used in § 523(a)(4), the only remaining form of trust that could arise under the Act would be one stemming from an agent's wrongdoing; and, as we have seen, such a trust is not what Congress had in mind when designing the exemption contained in § 523(a)(4).

In our previous cases, we have not expressly identified the particular "trust-like" duty —— or combination of duties —— that a state statute must impose to create the specie of fiduciary that meets muster under § 523(a)(4). Nonetheless, one such duty has loomed large —— the duty that a trustee refrain from spending trust funds for non-trust purposes. Indeed, on two occasions, the absence of such a requirement has proved determinative. In Boyle, we examined whether a contractor was a fiduciary under § 523(a)(4) by virtue of the Texas Construction Trust Fund Statute. The version of the that statute then in force specified that funds loaned or paid under a construction contract to finance improvements on particular real property were trust funds, and set forth criminal penalties for a contractor or other trustee who, with the intent to defraud, used those funds without paying fully his obligations to beneficiary.[22] In rejecting the argument that the statute constituted as fiduciaries all persons accepting funds or loans under a construction contract, we stressed that the statute prohibited the expenditure of trust funds for non-trust purposes only if done with fraudulent intent.

> [The construction fund statute] does not prohibit a fund holder from paying, without any fraudulent intent, creditors on one project with surplus funds left over from earlier work and then using funds provided for that later project on still other work. In short,

---

[22]     Boyle, 819 F.2d at 585-86.

the statute does not create "red," "blue," and "yellow" dollars each of which can only be used for "red," "blue," or "yellow" construction project.[23]

We held that, absent such an affirmative requirement,[24] the subject statute did not make fiduciaries out of all contractors for the purposes of § 523(a)(4), but rather made fiduciaries of only those contractors who diverted funds with the intent to defraud.[25]

In Coburn Company of Beaumont v. Nicholas,[26] we were confronted with an amended version of the Texas Construction Fund Statute featured in Boyle. Although the amended statute broadened the scienter requirement to cover trustees who "intentionally or knowingly" spent trust funds for non-trust purposes before fully paying all legitimate obligations, it also provided affirmative defenses that permitted a trustee to spend trust funds for non-trust purposes under certain circumstances.[27] As the amended version of the statute, like its predecessor, did not expressly and totally prohibit such expenditures, we again rejected the argument that the statute elevated every contractor who accepts funds or loans under a construction contract to a § 523(a)(4) fiduciary.[28]

Our discussion of the significance of the absence of a statutory prohibition of spending

---

[23]   Id. at 586.

[24]   We further noted the statute's lack of a segregation requirement or even bookkeeping obligations. Id. at 592.

[25]   Id. at 592-93.

[26]   956 F.2d 110 (5th Cir. 1992).

[27]   Id. at 112.

[28]   Id. at 114. Both Nicholas and Boyle held that the Texas Construction Trust Fund Statute created fiduciary duties under § 523(a)(4) only to the extent that it defined wrongful conduct. These holdings are seemingly in tension with the rule that the statute must impose duties prior to the act of wrongdoing. For present purposes, however, the two cases' analysis regarding the absence of a prohibition on spending for non-trust purposes is instructive.

8

putative trust funds for non-trust purposes does not suggest the converse, i.e., that the mere inclusion of such a prohibition would alone be sufficient to create a fiduciary relationship under the debt discharge exception.[29] The absence of such a prohibition is telling, though, because without such a requirement, the supposed trustee appears not so much to be responsible for managing a beneficiary's funds on the beneficiary's behalf as to be engaged in a typical agency relationship.

Not only do the Act and the regulations promulgated under it fail to prohibit expressly a ticket sales agent from spending lottery ticket proceeds for non-lottery —— i.e., non-trust —— purposes; neither do they mandate that the agent must segregate lottery proceeds from his other funds. Clearly, the absence of this latter duty undercuts the argument that the Act seeks to prohibit an agent from spending trust funds for non-trusts purposes without expressly saying so. For, in the absence an express segregation requirement, it would be virtually impossible to monitor even an express spending prohibition, let alone one imposed sub silentio. Therefore, any suggestion that a fiduciary of § 523(a)(4) proportions is somehow conjured up by implication just does not hold water.

The statute, of course, does require that the agent remit to the Commission the net lottery proceeds. And, in aid of that requirement, the regulations do impose on the ticket sales agent the duties to account for and preserve the lottery proceeds and to conduct several specified bookkeeping requirements. Irrespective of these features, though, we agree with our colleagues on the Seventh Circuit who, in Marchiando v. State of Illinois Department of Lottery,[30] concluded that these

---

[29] The statute at issue in Carey Lumber Co. v. Bell, 615 F.2d 370 (5th Cir. 1980) —— the only case in which we ever found a statute created a trust generally sufficient for the debt discharge exception —— however, did expressly prohibit a trustee from spending trust funds for non-trust purposes before paying off all valid claims. Id. at 373 n. 2.

[30] 13 F.3d 1111 (7th Cir.), cert. denied, 512 U.S. 1205, 114 S.Ct. 1275, 129 L.Ed.2d 810 (1994).

relatively prosaic duties are insufficient to provide the legal foundation for a state's efforts to boot-strap a principal/agent relationship into a § 523(a)(4) relationship, and thereby rachet up the state's ability to establish and enforce its lien in the lottery proceeds.[31]

Indeed, Marchiando —— a case virtually on "all fours" with the instant action —— sheds further light on our inquiry. In Marchiando, the Illinois Department of Lottery argued, as the Commissioner does here, that a lottery ticket sales agent's debt to the state was nondischargeable under § 523(a)(4) because the agent was a fiduciary under the Illinois Lottery Law. The Illinois law not only labeled the lottery proceeds a trust fund, as does the Act, but went so far as to prohibit the commingling of those proceeds with the agent's other funds, a feature missing from the Act.[32] The Marchiando court nevertheless held that these Illinois provisions were not sufficient to transform the agency relationship into a fiduciary one, describing the arrangement as "remote" from "a conventional trust or fiduciary setting, in which someone . . . in whom confidence is reposed is entrusted with another person's money for safekeeping."[33] Noting that a true fiduciary relationship involves a difference in knowledge and power between the fiduciary and beneficiary, in which the former assumes "a position of ascendancy over the latter," the court was particularly hesitant to take at face value the state's attempt to cast itself in the role of beneficiary.[34]

The Marchiando analysis highlights the central focus of the inquiry under § 523(a)(4) —— whether the alleged fiduciary exercises actual control over the alleged beneficiary's money or

---

[31]     Id. at 1116 (referring specifically to the statute's segregation requirement).

[32]     Id. at 1111.

[33]     Id. at 1116 (citation omitted).

[34]     Id. (citations omitted).

property. As we stated Bennett, "it is clear that the issue of control has always been the critical fact looked to by the courts in imposing this high level of responsibility."[35] The Act indisputably did not grant Tran such control. Rather, the Act simply (1) authorized Tran to sell lottery tickets, and (2) required her to remit net proceeds; it never vested her with independent discretion to manage the state's money.

The Act thus not only fails to impose the core duties to which we have looked in the past as indicators of a true fiduciary relationship —— an express prohibition on spending trust funds for non-trust purposes and an express requirement to segregate such funds —— but, more fundamentally, fails to entrust the ticket sales agent with the state's money for safekeeping or otherwise to grant him a "position of ascendency" over the state. In short, although the state as principal, sought by the simple expediency of a change in labels to transform its relationship with Tran, as its agent, it failed to effect a change in the substance of that relationship. As Justice Cardozo wrote regarding an analogous attempt by a party to a commercial transaction to recast his counterpart as a fiduciary:

> [A] factor does not act in fiduciary capacity . . . . [His] obligation is not turned into one arising from a trust because the parties to one of the documents has chosen to speak of it as a trust . . . . The relation would be no different if the duty had been stated in terms of covenant alone without the descriptive epithet.

In spite of the "descriptive epithets" contained in the Act, Tran remained nothing more than an agent. Her debt was not incurred "while acting in a fiduciary capacity," and therefore is dischargeable. Accordingly, the ruling of the bankruptcy court, affirmed by the district court, is in all respects,

AFFIRMED.

---

[35]     Bennett, 989 F.2d at 789.

11

EMILIO M. GARZA, Circuit Judge, dissenting:

Because I believe that under Fifth Circuit law, the Texas Lottery Act and administrative rules impose sufficient trust-like duties to render a lottery ticket sales agent a fiduciary for purposes of § 523(a)(4), I dissent.

Contrary to the majority's assertion that the Act does not "prohibit an agent from spending lottery ticket proceeds on items not related to the lottery," *ante* at 2, I read the Act and administrative rules as providing that the proceeds and unsold tickets (after payment of prizes and commissions) cannot be used for purposes other than payment to the state, *i.e.*, for nontrust purposes. *See* Tex. Gov't Code § 477.353; 16 Tex. Admin. Code § 401.351. We have held that such a restriction supports a finding that a trust exists for purposes of § 523(a)(4). *See Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir. 1980); *Coburn Co. v. Nicholas* (*In re Nicholas*), 956 F.2d 110, 112-13 (5th Cir. 1992). Moreover, while the Act and administrative rules do not require every retailer to segregate the trust proceeds, they do impose on retailers a "fiduciary duty to account for lottery proceeds." 16 Tex. Admin. Code § 401.351. Furthermore, Texas law specifically requires retailers to maintain records of the disposition of tickets, money received from sales of tickets, and prizes awarded by them, *see* Tex. Gov't Code § 466.352(b), to file with the Texas Lottery reports of their receipts and transactions, *see* 16 Tex.

-13-

Admin. Code § 401.352(b), and keep on the premises accurate and complete records of all transactions with the Commission, *see* 16 Tex. Admin. Code § 401.363. Again, our case law indicates that these requirements are trust-like duties. *See Boyle v. Abilene Lumber (In re Boyle)*, 819 F.2d 583, 592 (5th Cir. 1992); *In re Nicholas*, 956 F.2d at 112-13 (5th Cir. 1992). We have never required the segregation of funds to impose a fiduciary relationship for purposes of § 523(a)(4) and instead have indicated that an obligation to maintain the separate identity of funds-- which the Act and rules imposes--is a specific trust duty sufficient to impose a such a fiduciary relationship. *See Boyle v. Abilene Lumber (In re Boyle)*, 819 F.2d 583, 592 (5th Cir. 1992); *In re Nicholas*, 956 F.2d at 112-13 (5th Cir. 1992).

Although the Seventh Circuit's *Marchiando* case admittedly concerns a lottery statute much like the Texas statute, I believe that the *Marchiando* court's analysis of the Illinois lottery statute is inconsistent with our circuit's case law and, therefore, that any reliance on that case is misplaced. Specifically, I believe that our case law, most notably *Carey Lumber*, *In re Boyle*, and *In re Nicholas*, assigns differing significance than does *Marchiando* to the various duties imposed by the Texas Lottery Act and administrative rules and, as I have noted, indicates that those duties are sufficiently trust-like to impose a fiduciary relationship under § 523(a)(4). While I find *Marchiando* persuasive

-14-

and may have supported the result reached by the majority if we had heard this case with a clean slate in our circuit, because I read our existing precedent as supporting the Commission's position that the Texas Lottery Act and administrative rules impose a fiduciary obligation for purposes of § 523(a)(4), I respectfully dissent.