**In re Louis D. VERRONE, Debtor.**

**Joan Subich, Plaintiff,**

**v.**

**Louis D. Verrone, Defendant.**

**Bankruptcy No. 01–22688–BM.
Adversary No. 01–2225–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

May 1, 2002.

---

Vicki Kuftic Horne, Esq., Pittsburgh, PA, for Plaintiff.

Mark A. Gregg, Esq., for Defendant.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff Joan Subich has brought this adversary action seeking a determination that a debt allegedly owed to her by debtor Louis Verrone is excepted from discharge in accordance with § 523(a)(4) of the Bankruptcy Code. She maintains that debtor defrauded her while acting in a fiduciary capacity when he falsely represented that repayment of a promissory note she purchased through him as an investment was guaranteed in the event the issuer of the note defaulted.

Debtor denies that § 523(a)(4) applies and insists that the debt is dischargeable.

We find for reasons set forth herein that the requirements of § 523(a)(4) are not satisfied in this instance and that the debt consequently is not excepted from discharge.

### — FACTS —

Debtor worked for John Hancock as an insurance agent from 1976 until 1991. He became licensed under federal and Pennsylvania law to sell registered securities in 1984 or 1985, at which time he began selling registered annuities, mutual funds and other investments offered by John Hancock.

He became an independent agent of John Hancock in 1991 and in that capacity continued selling insurance and registered securities approved by John Hancock. His relationship with John Hancock was terminated in October of 1997 for selling securities not offered by John Hancock.

Immediately thereafter debtor became an agent for National Planning Corporation (NPC) and sold securities it offered. He was required to obtain prior approval of NPC to sell securities it did not offer.

Plaintiff presently has a high school education and is 67 years old. She collects social security benefits and works in a school cafeteria for which she earns approximately $7,000 per year.

Plaintiff's first contact with debtor occurred early in the 1980s, when she purchased a life insurance policy through him.

She began purchasing mutual funds and annuities through debtor beginning in 1985 while he was associated with John Hancock and later on during his association with NPC.

On January 30, 1998, the Pennsylvania Securities Commission issued debtor a rule to show cause for alleged violations of Pennsylvania securities law in selling investments pertaining to pay telephones.

Late in 1997 or early in 1998, shortly after debtor had begun selling securities for NPC, plaintiff informed debtor that she was dissatisfied with the return on her investments and inquired whether he could recommend alternative investments with a higher rate of return.

Debtor approached plaintiff early in 1998 about investing in promissory notes issued by LifeBlood Biomedical, a Florida corporation involved in cancer research. Debtor informed plaintiff that the annual rate of return was 10.375% and that repayment of the notes was "guaranteed". He specifically told plaintiff that New England Insurance was responsible for paying all outstanding principal and interest in the event LifeBlood defaulted.

The total balance in plaintiff's investment accounts at that time was $73,349.09.

On February 10, 1998, plaintiff filled out an application to purchase a promissory note from LifeBlood in the amount of $73,349.09. The note had a term of nine months and paid interest at the rate of 10.375% per annum. Plaintiff elected to receive interest payments on a monthly basis and to receive payment of the principal amount in a lump sum upon expiration of the note.

The application form plaintiff filled out represented that the note was not guaranteed by any agency of the United States government but was bonded by New England Insurance Company. The application form was prepared by LifeBlood. Debtor played no role in its preparation. It was prepared by LifeBlood.

Plaintiff cashed in all her other investments to purchase the promissory note. The net amount she realized after payment of a penalty for early withdrawal was $65,707.70. LifeBlood contributed a percentage of the principal amount of the note and debtor contributed a sizable portion of his commission on the sale of the note to make up the difference between the principal amount of the note and the net amount plaintiff realized from cashing in her other investments. The amount of the commission debtor earned from the transaction was reduced as a consequence by several thousands of dollars to slightly more than $1,000.

LifeBlood executed a nine-month promissory note in the amount of $73,349.04 in favor of plaintiff on February 24, 1998. Concurrently, a certificate purportedly issued by Threshold Insurance Services, Ltd., instead of New England Insurance, was sent to plaintiff stating that it was obligated as guarantor to compensate plaintiff for any loss she might suffer in the event LifeBlood defaulted on its obligations arising under the note she had purchased. Debtor did not have a hand in preparing the certificate.

Plaintiff received all monthly interest payments due and owing during the nine-month term of the note. LifeBlood defaulted, however, on its obligation to repay the principal amount due at the expiration of its term on November 24, 1998.[1]

---

1. Not everyone to whom debtor had sold promissory notes issued by LifeBlood suffered the same fate as did plaintiff. Some of them received all principal and interest due under the notes they purchased.

Plaintiff notified Threshold Insurance on February 23, 1999, that LifeBlood had defaulted and requested pursuant to the above guarantee that Threshold pay her the full amount of the unpaid principal.

Her request for payment of the unpaid principal due under the note subsequently was denied. Plaintiff received notice from Threshold Insurance that it had no record of ever having issued a certificate to plaintiff guaranteeing repayment of the above promissory note in the event LifeBlood defaulted. According to Threshold, Life-Blood had not paid the required fee for the master guarantee or for the certificate it supposedly had issued to plaintiff. Threshold intimated that the principals of LifeBlood had fraudulently issued the certificate of guarantee received by plaintiff.

The Comptroller of Florida's Department of Banking and Financing notified plaintiff on February 29, 1999, that it was investigating the activities of LifeBlood concerning the sale of its securities and asked her to complete a complaint form concerning the above promissory note. The record does not indicate the outcome of the investigation.

Plaintiff brought suit in state court on March 1, 2000, against debtor and NPC in connection with the above LifeBlood promissory note. Counts I, III and IV respectively asserted claims against debtor and NPC for common law fraud, breach of fiduciary duty and negligence. Counts V and VI asserted claims against debtor and NPC for fraud under the Pennsylvania Securities Act and the Pennsylvania Consumer Protection Act, respectively.

The Pennsylvania Securities Commission issued findings of fact and conclusions of law and an order on June 20, 2000, in connection with its investigation of debtor's activities. It found that debtor had sold various unregistered securities, including promissory notes issued by Life-Blood which plaintiff (as well as others) had purchased. In addition, it concluded that debtor had sold the securities in willful violation of Pennsylvania securities laws and that his conduct provided a basis for suspending or revoking his registration as a registered securities broker-dealer in Pennsylvania. Debtor was permanently barred from being a registered securities broker-dealer in Pennsylvania and ordered to pay an administrative assessment in the amount of $10,000 plus investigative and legal costs in the amount of $5,567.40 incurred by the Pennsylvania Securities Commission.[2]

Debtor filed a voluntary chapter 7 petition on March 19, 2001.

Plaintiff commenced the above adversary action on June 22, 2001, seeking a determination that debtor owed her a debt in connection with the above LifeBlood promissory note that was excepted from discharge by reason of § 523(a)(4) of the Bankruptcy Code.

Plaintiff also filed a claim in debtor's bankruptcy case in connection with the above promissory note issued by LifeBlood On December 6, 2001. The amount of her claim is $73,349.04 plus interest.

Subsequent to December 6, 2001, plaintiff settled her claims against NPC in the pending state court lawsuit for the sum of

---

2. We note these findings and conclusions for the purpose of presenting a more thorough depiction of debtor's conduct at the time he sold the above promissory note to plaintiff. As we shall see later on, however, there does not appear to be any nexus between these findings and conclusions and the theory under which plaintiff has proceeded. They do not, in other words, support the inference that the debt in question is excepted from discharge by reason of § 523(a)(4).

$130,000. The specifics of the settlement are not part of the record in this case.

Trial of plaintiff's adversary action brought by plaintiff took place on March 15, 2002, at which time both sides were given an opportunity to present evidence on the issues in the case.

— DISCUSSION —

■ Because providing individual debtors with a "fresh start" by relieving them from the weight of oppressive indebtedness is one of the overriding objectives of the Bankruptcy Code, exceptions to the discharge of a debt are strictly construed in favor of the debtor and against the objecting creditor. *Insurance Company of North America v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir.1995).

One such exception to discharge is found at § 523(a)(4) of the Bankruptcy Code. A debt arising out of fraud committed by an individual debtor while acting in a fiduciary capacity is not discharged. 11 U.S.C. § 523(a)(4).

Plaintiff asserts that the debt owed to her by debtor that arose when LifeBlood defaulted on the above promissory note and Threshold Insurance declined to "make good" on it after default is excepted from discharge by virtue of § 523(a)(4).

■ To prevail under this exception, plaintiff must demonstrate that: (1) debtor was acting in a fiduciary capacity; and (2) debtor committed fraud while acting in that capacity. *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir.1996). The burden of proving that a debt is excepted from discharge by virtue of § 523(a) lies with the creditor, who must establish entitlement to the exception by a preponderance of the evidence. *In re Cohn*, 54 F.3d at 1114.

### Was Debtor Acting In A Fiduciary Capacity?

■ Under Pennsylvania law, the relationship between a securities broker and his client is one of principal and agent by virtue of which the broker has certain fiduciary duties vis-à-vis the client. *See Merrill Lynch, Pierce Fenner & Smith v. Perelle*, 356 Pa.Super. 165, 182, 514 A.2d 552, 560 (1986).

■ This determination does not, however, bring our analysis to an end. The question presently before us is whether, *for purposes of § 523(a)(4) of the Bankruptcy Code,* debtor was acting as a fiduciary when plaintiff purchased through him the promissory note issued by LifeBlood. The answer to this question depends on federal rather than state law. *E.g., Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir.1997), *cert. denied,* 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998); *In re Young*, 91 F.3d at 1371; *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986); *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338–39 (5th Cir.1980).

The United States Court for the Third Circuit for the Third Circuit thus far has not said whether the criteria for determining if a debtor was acting as a fiduciary for purposes of § 523(a)(4) are the same as the criteria for making such a determination under state law. *See Goldberg v. New Jersey Lawyers' Fund For Client Protection*, 932 F.2d 273, 278 (3d Cir.1991). In particular, it declined to say whether the criteria under federal law are narrower than the criteria comprising the common law meaning as involving trust, good faith, and confidence. *Id.*

■ Courts that have confronted the issue, however, have uniformly held that, for purposes of § 523(a)(4), the concept of fiduciary is *narrower* than under the com-

mon law. *E.g., Texas Lottery Commission v. Tran,* 151 F.3d 339, 342 (5th Cir.1998). An individual may qualify as a fiduciary under state law but not for purposes of federal bankruptcy law.

■ These courts also have held that a fiduciary relationship for purposes of § 523(a)(4) is limited to situations in which an express or technical trust exists. *E.g., Matter of Tran,* 151 F.3d at 342; *In re Young,* 91 F.3d at 1371; *In re Angelle,* 610 F.2d at 1338–39. Constructive and *ex maleficio* trusts do not qualify. *E.g., Matter of Tran,* 151 F.3d at 342; *Lewis v. Scott (In re Lewis),* 97 F.3d 1182, 1185 (9th Cir.1996).

■ Whether an express trust exists in this regard depends on state law. *In re Lewis,* 97 F.3d at 1185; *Ragsdale,* 780 F.2d at 796. The following elements must be present for an express or technical trust to exist under the law of Pennsylvania: (1) an express intention to create a trust; (2) an ascertainable *res;* (3) a sufficiently certain beneficiary; and (4) a trustee who "owns" and administers the *res* for the benefit of the beneficiary. *First Options of Chicago, Inc. v. Kaplan (In re Kaplan),* 162 B.R. 684, 705 (Bankr.E.D.Pa. 1993).

■ Plaintiff, who has the burden of proof on this issue, has failed to demonstrate that debtor was acting as a fiduciary relative to plaintiff for purposes of § 523(a)(4) when plaintiff purchased the above promissory note through him. She specifically offered no evidence establishing that any of the above required elements of an express trust were present in this instance. Plaintiff apparently assumed that because debtor was acting as a fiduciary under state law he also was acting as a fiduciary for purposes of § 523(a)(4). We have seen that this assumption is erroneous.

Moreover, when we consider the evidence offered at trial, we affirmatively conclude that an express trust did not exist. There was, for instance, no intention by the parties to create a trust or an ascertainable trust *res* that debtor "owned" and administered for the benefit of plaintiff.

Our analysis need not end here. Even if plaintiff had demonstrated that debtor was acting as a fiduciary when he brokered plaintiff's purchase of the promissory note, she did not demonstrate that debtor defrauded her while acting in such a capacity.

### Did Debtor Defraud Plaintiff?

■ The type of fraud required for purposes of § 523(a)(4) is the same as is required for purposes of § 523(a)(2)(A). *In re Chavez,* 140 B.R. 413, 423 (Bankr. W.D.Tex.1992). Actual fraud—i.e., fraud in fact—is required. *Roussos v. Michaelides (In re Roussos),* 251 B.R. 86, 91–92 (9th Cir. BAP 2000). Moral turpitude or intentional wrongdoing must be present. *Bell v. Berry (In re Berry),* 174 B.R. 449, 453 (Bankr.W.D.Tex.1994). Implied or constructive fraud does not suffice. *Id.*

It is not entirely obvious what fraud debtor is alleged to have committed while acting in a fiduciary capacity relative to plaintiff. As far as we can determine, plaintiff asserts that debtor fraudulently represented to her that the repayment of the note was guaranteed by New England Insurance in the event LifeBlood defaulted.

This representation unquestionably turned out to be false. As plaintiff necessarily knew, New England Insurance did not guarantee repayment of the note. Neither had any one else. Although plaintiff received a certificate alleging that Threshold Insurance had guaranteed repayment of the note, Threshold Insurance eventually denied plaintiff's demand that it make good on the note. It intimated that

the certificate received by plaintiff was not authentic. In addition, it maintained that LifeBlood had not paid the required fee for the guarantee and that it had no record of having ever issued the certificate to plaintiff.

Fraud consists of any act calculated to deceive, whether by single act or in combination, by suppression of the truth or suggestion of what is false, by direct falsehood or innuendo, by speech, silence, word of mouth, look, or gesture. *Delahanty v. First Pennsylvania Bank,* 318 Pa.Super. 90, 108, 464 A.2d 1243, 1252 (1983). It "is composed of a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim". *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 484, 329 A.2d 812, 829 (1974).

To prove fraud in this case, plaintiff must establish: (1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge that it is false or with reckless disregard as to its truth or falsity; (4) with intent to mislead another to rely on it; (5) justifiable reliance by the other person; and (6) a resulting injury that it proximately caused by the reliance. *Gibbs v. Ernst,* 538 Pa. 193, 208, 647 A.2d 882, 889 (1994).

The party alleging fraud has the burden under Pennsylvania law of proving each of these elements by clear and convincing evidence. *Moser v. DeSetta,* 527 Pa. 157, 165, 589 A.2d 679, 682 (1991). For purposes of § 523(a)(4) of the Bankruptcy Code, however, plaintiff need prove fraud only by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Plaintiff in this case has failed to establish all of the above required elements of fraud by a preponderance of the evidence.

During trial plaintiff made much ado about debtor's misrepresentation that New England Insurance specifically would guarantee repayment of the promissory note in the even LifeBlood defaulted. In our estimation, debtor's representation concerning the specific identity of the alleged guarantor was not material to the transaction. Plaintiff made no showing that she would not have purchased the note had she been told that someone other than New England Insurance was going to guarantee the note.

Moreover, even if the specific identity of the guarantor somehow were material to the transaction, plaintiff did not establish that debtor knew or should have known that New England Insurance had not guaranteed repayment or had reason to wonder whether it had not. The application plaintiff filled out prior to purchasing the note, which was prepared by Life-Blood, not debtor, specifically identified New England Insurance as the guarantor. Evidence offered at trial indicates that debtor was no less surprised than was plaintiff that New England Insurance had not guaranteed repayment of the note.

The matter does not end there. Plaintiff, we have noted, also maintains that debtor fraudulently misrepresented that repayment of the note was guaranteed *by someone* in the event of default by Life-Blood. It turned out that repayment of the note was not guaranteed by anyone at all. Threshold Insurance denied plaintiff's demand for repayment after LifeBlood had defaulted because LifeBlood had not paid the required fee for the guarantee or for issuance of the certificate of guarantee to plaintiff.

Plaintiff made no showing that debtor knew or had reason to know that his rep-

resentation that the note was guaranteed by someone was false. Debtor believed that repayment was guaranteed and did not know that it was not guaranteed until long after plaintiff had purchased the note. He was no less surprised than was plaintiff when he learned otherwise.

Moreover, there is no good reason to think that debtor so represented to plaintiff with the intent to mislead her to rely on it. The commencement of an investigation by the Florida Securities Commission into the sale of notes issued by LifeBlood suggests that any wrongdoing in this regard was perpetrated by the agents and principals of LifeBlood.

It is, we believe, relevant and significant that debtor agreed to a reduction in his commission from the sale of the promissory note to plaintiff so that the face value of the note would equal the amount in plaintiff's investment accounts that she cashed in to purchase the note. We noted previously that she incurred an early withdrawal penalty which reduced the amount available to purchase the note by nearly eight thousand dollars. Had debtor in reality intended to defraud plaintiff, we think It doubtful that debtor would have agreed to a reduction in his commission by several thousands of dollars to make the sale a reality.

Finally, plaintiff also made much ado at trial about the fact that debtor was found to have violated the securities laws of Pennsylvania in brokering the sale of the promissory note and that he was permanently bared from selling securities in Pennsylvania. In our estimation, any violations of Pennsylvania securities laws by debtor in connection with the sale of promissory notes issued by LifeBlood or by others has no bearing on the issue whether debtor defrauded plaintiff. As we understand it, the Securities Commission of Pennsylvania in essence determined that debtor had violated Pennsylvania law by selling securities that were not registered. It made no specific finding that by so doing, debtor actually defrauded his clients. We are not willing to infer from the fact that debtor was found to have violated the securities laws of Pennsylvania that, as a matter of law, he therefore defrauded debtor for purposes of § 523(a)(4) of the Bankruptcy Code.

We conclude in light of the foregoing that plaintiff has failed to demonstrate that debtor defrauded her while acting in a fiduciary capacity when he brokered her purchase of the promissory note issued by LifeBlood. As a consequence, she has failed to establish that any debt he owes her is excepted from discharge.