**In re Donald K. MASDEA t/a Carrick Produce f/t/a C.J. Edwards, Debtor.**

**Consumers Produce Co., Inc., Plaintiff,**

**v.**

**Donald K. Masdea, t/a Carrick Produce f/t/a C.J. Edwards, Defendant.**

**Bankruptcy No. 03–30490 BM.**
**Adversary No. 03–3016 BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

March 19, 2004.

John P. Donovan, Oakmont, PA, for Plaintiff.

Charles H. Lehman, Pittsburgh, PA, for Defendant.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Consumers Produce Co., Inc., plaintiff in this adversary action, has brought a mo-

tion for summary judgment with respect to its claim that a debt owed to it by debtor in the amount of $37,582.57 is excepted from discharge by § 523(a)(4) of the Bankruptcy Code. According to Consumers, there is no genuine issue of material fact concerning the proposition that, by not paying for produce it had supplied to him, debtor committed a defalcation while acting as a fiduciary.

Debtor opposes the motion. There is, debtor maintains, a genuine issue concerning whether he qualified as a "dealer" under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*

Consumers' motion will be denied. There remains a genuine issue concerning whether debtor was a "dealer" for purposes of PACA during the period of time relevant to this case.

## — FACTS —

Consumers is in the business of buying and selling wholesale quantities of various perishable agricultural commodities. It is a licensed dealer under PACA.

Debtor is an individual who previously did business as Carrick Produce.

From October 24, 2002, through February 5, 2003, Consumers sold perishable agricultural commodities to debtor. The total amount of the invoices for the shipments was $37,582.57. Payment was due ten days from receipt of a shipment of produce. Debtor never paid any of the invoices for these shipments.

At some unspecified time after February 5, 2003, Consumers commenced a civil action against debtor in the United States District Court for the Western District of Pennsylvania concerning the unpaid invoices. The action was brought under PACA.

Among other things, Consumers alleged in its complaint that it had sold produce to debtor in interstate commerce; that it was the beneficiary of a statutory trust in the amount of $37,582.57; that the trust consisted of all produce it had shipped to debtor and all produce-related items, including all funds commingled with funds from other sources and all assets procured by such funds or in the possession or control of debtor since creation of the trust.

On July 7, 2003, the District Court entered a default judgment in favor of Consumers and against debtor in the amount of $37,582.57 plus interest. The order declared that this amount was a trust debt in accordance with § 499e(c) of PACA.

Debtor did not appeal the order, but instead filed a voluntary chapter 7 bankruptcy petition on August 21, 2003. The schedules list assets with a total declared value of $2,000, all of which debtor has claimed as exempt, and liabilities, all of them general and unsecured, in the amount of $70,788.85. Consumers is identified as having an undisputed general unsecured claim in the amount of $37,582.57 arising out of the above default judgment.

Consumers commenced this adversary action on September 26, 2003, seeking a determination that the above debt is excepted from discharge by § 523(a)(4) of the Bankruptcy Code. In addition to denying in his answer that the debt was excepted from discharge by this provision, debtor denied that he was ever a dealer or was subject to licensor as such under PACA. He also denied that he was subject to a statutory trust under PACA.

Consumers brought a motion for summary judgment on December 12, 2003. Oral argument on the motion and debtor's opposition to it was heard on March 1, 2004.

## — DISCUSSION —

### — I —

Summary judgment is mandated when: ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Federal Rule of Civil Procedure 56(c).*

A fact is "material" for purposes of Rule 56(c) if, under the applicable substantive law, it is "outcome determinative". *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). An issue is "genuine" for such purposes if, based on the evidence presented, a reasonable jury could find in favor of the non-moving party on that issue. *Id.*

The standard for summary judgment "mirrors" the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). A verdict shall be entered if, under the applicable substantive law, "there can be but one reasonable conclusion as to the verdict". *Id.,* 477 U.S. at 250, 106 S.Ct. at 2510.

Regardless of which party would have the burden of persuasion at trial, the moving party has the burden of demonstrating that there are no genuine issues of material fact. If, however, the non-moving party would have the burden of persuasion at trial, the moving party may satisfy its burden by demonstrating that the evidence of record would not suffice to enable the non-moving party to meet its burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327–28, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Once the moving party has shown that there are no genuine issues of material fact, the non-moving party then must come forward with "specific facts showing that there is a genuine issue for trial". *Matsushita Electric Industrial Co. v. Zenith Radio Corp.* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

We must view the facts in a light most favorable to the non-moving party when considering a motion for summary judgment. *Beers–Capitol v. Whetzel,* 256 F.3d 120, 130 n. 6 (3d Cir.2001). The non-moving party may not rest on entirely conclusory allegations if it is to successfully avoid a summary judgment. It instead must point to facts demonstrating that there is a genuine issue of material fact. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

Issues of credibility can defeat a motion for summary judgment only where an issue of material fact cannot be resolved without observing the demeanor of a witness at trial to evaluate their credibility. *Schoonejongen v. Curtiss–Wright Corp.* 143 F.3d 120, 130 (3d Cir.1998). Concerns about credibility, in other words, cannot defeat a summary judgment motion when the moving party has demonstrated that there are no genuine issues of material fact.

Credibility concerns notwithstanding, summary judgment is especially appropriate when the non-moving party has presented no evidence that would enable a reasonable jury to find in its favor. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56.

### — II —

■ A discharge granted under § 727 of the Bankruptcy Code does not discharge an individual debtor from a debt for defalcation committed while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4).

Consumers maintains in its complaint that the debt owed to it by debtor is

excepted from discharge by this provision. According to Consumers, debtor's failure to pay for the produce it supplied during the relevant period amounted to a defalcation by debtor while he was acting in a fiduciary capacity.

To prevail under this theory, Consumers must prove that: (1) debtor was acting in a fiduciary capacity; and (2) debtor committed a defalcation while acting in such capacity. *Subich v. Verrone (In re Verrone)*, 277 B.R. 66, 71 (Bankr. W.D.Pa.2002). A creditor objecting to the discharge of a debt owed to it by a debtor in bankruptcy has the burden of proving, by a preponderance of the evidence, that the debt falls into one of the numerous exceptions to discharge found at § 523(a) of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

Whether a debtor qualifies as a fiduciary for purposes of § 523(a)(4) is a question of federal law. *Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1189 (9th Cir.2001); *In re Verrone*, 277 B.R. at 71. The concept of a fiduciary is narrower in a bankruptcy context than it is under the common law. One may qualify as a fiduciary under the common law without so qualifying for purposes of § 523(a)(4). *In re Verrone*, 277 B.R. at 71.

The concept of a fiduciary for purposes of § 523(a)(4) is limited to situations where an express or technical trust exists. A trust *ex maleficio*—i.e., a trust which arises by operation of law upon the commission of a wrongful act—does not qualify. *In re Hemmeter*, 242 F.3d at 1189–90; *Matter of Tran*, 151 F.3d 339, 342 (5th Cir.1998). A fiduciary relationship established by a statute also may cause a debtor to be considered a fiduciary for purposes of § 523(a)(4). *In re Hemm-eter*, 242 F.3d at 1190; *Quaif v. Johnson*, 4 F.3d 950, 953–54 (11th Cir.1993).

## — III —

It previously was noted that the district court entered a default judgment in favor of Consumers and against debtor. The decretal portion of the order provides in part as follows:

> ... judgment is hereby entered in favor of plaintiff and against defendant Donald K. Masdea t/a Carrick Produce ... in the sum of $37,582.57, a trust debt under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c)....

We must determine whether, and to what extent, the language of this valid and final court order determines in any way the outcome of the present summary judgment motion by Consumers.

Collateral estoppel, which prohibits litigation of issues that were previously litigated and resolved, applies to bankruptcy proceedings. *Grogan*, 498 U.S. at 284–85 n. 11, 111 S.Ct. at 658 n. 11. Because a federal court issued the above judgment, we must apply federal principles of collateral estoppel to determine whether it applies to this adversary action. *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 214 (3d Cir.1997).

The following requirements must be met for collateral estoppel to apply: (1) the issue sought to be precluded must be the same as an issue in the prior action; (2) the issue must have been actually litigated in the prior action; (3) the issue must have been determined by a valid final judgment; and (4) determination of the issue must have been essential to the judgment in the prior action. *In re Docteroff*, 133 F.3d at 214.

Requirements (1), (3) and (4) are satisfied in this instance. The question whether a trust existed with debtor as trustee

was at issue and was determined by a valid final order in the district court action. The determination also was essential therein because Consumers had brought the action pursuant to PACA.

 The judgment against debtor was a default judgment. As a general rule, any issue raised in a case where a default judgment is entered was **not** "actually litigated" for purposes of collateral estoppel. Application of collateral estoppel in such a situation would be "oppressive" and "misconceives the nature of a default judgment". *Matter of McMillan*, 579 F.2d 289, 293 (3d Cir.1978). This general rule applies to a "typical" default judgment, where a defendant neglects to participate or elects not to do so in any way because of the inconvenience of the forum selected by the plaintiff, the expense of defending the lawsuit, or the like. *In re Docteroff*, 133 F.3d at 215.

 An exception to the general rule exists, however, where a defendant "participates extensively" in the lawsuit but deliberately prevents resolution of the lawsuit and a default judgment is entered against the defendant as a sanction for refusing to comply with valid court orders. The defendant is deemed in that instance to have "actually litigated" an issue for purposes of collateral estoppel. *Id.*

 The record at this stage of the adversary action is sparse and does not indicate whether or not debtor "actively participated" in the district court action in which he was defendant. Because of this, we are not prepared to conclude that the issue whether a trust existed under PACA was previously "actually litigated" and that debtor consequently is collaterally estopped from denying in this adversary action that a trust existed for the benefit of Consumers of which he was trustee.

— IV —

It therefore remains to be determined if there is genuine dispute concerning whether debtor owed a fiduciary duty to Consumers which he breached by failing to pay Consumers for the produce it had delivered.

 PACA originally was enacted in 1930 to promote fair trading practices in the marketing of perishable agricultural commodities. It was amended in 1984 to create a statutory trust for the benefit of unpaid suppliers. *Consumers Produce Co., Inc. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1377–78 (3d Cir.1994). The intent of the amendment was to protect shippers of perishable agricultural commodities from a practice whereby a purchaser of such commodities would grant other creditors a security interest in its inventory and accounts receivable, thereby leaving the supplier to hold an empty bag in the event of the buyer's bankruptcy. *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 199 (3d Cir. 1998).

 According to PACA, dealers who receive perishable agricultural commodities hold them *in trust* for suppliers until they are paid. The trust, which is a floating, non-segregated statutory trust, extends not only to perishable agricultural commodities; it also extends to, among other things, accounts receivable or proceeds from the sale of the commodities and of food products derived from the commodities. *Consumers Produce*, 16 F.3d at 1378.

According to PACA:

perishable agricultural commodities received by a ... dealer ... and any receivables or proceeds derived from the sale of such commodities ... shall be held by such ... dealer ... in trust for the benefit of all unpaid suppliers or

sellers of such commodities . . . until full payment of the sums owed in connection with such transaction has been received by such unpaid suppliers [or] sellers . . . .

7 U.S.C. § 499e(c)(2).

Under this provision, the purchaser of the produce is the trustee of the trust. *Consumers Produce*, 16 F.3d at 1381. Failure on the part of a dealer to make full payment promptly for perishable agricultural commodities received is unlawful. 7 U.S.C. § 499b(4).

A trust arising under § 499e(c)(2) is of the type required for § 523(a)(4) of the Bankruptcy Code to be operative. *N.P. Deoudes, Inc. v. Snyder (Matter of Snyder)*, 184 B.R. 473, 475 (D.Md.1995). An individual who is in a position to control assets of a PACA trust but does not preserve them for the benefit of unpaid suppliers or sellers has breached a fiduciary duty. Liability is imposed on a trustee who uses trust assets for any purpose other than paying suppliers or sellers. *Id.*, 184 B.R. at 475.

It is uncontroverted that Consumers sold perishable agricultural commodities to debtor and that debtor did not pay for them. It therefore follows that *if* debtor qualified as a "dealer" for purposes of PACA, debtor had a fiduciary duty, which he breached, to preserve the assets of the trust for the benefit of Consumers. It was noted previously that Consumers maintains that debtor is such a "dealer" while debtor denies that he is.

— V —

The present state of the record in this adversary action compels the conclusion that a summary judgment in favor of Consumers cannot be entered at this time. There is a genuine issue of material fact concerning whether debtor qualifies as a "dealer" under PACA. This disputed issue can be resolved only after a trial has taken place.

A "dealer" is defined for purposes of PACA as any person in the business of buying and selling in wholesale or jobbing quantities, as defined by the Secretary of the United States Department of Agriculture, any perishable agricultural commodity in interstate or foreign commerce. 7 U.S.C. § 499a(b)(6). There are, however, certain enumerated exceptions to this general definition. For instance, no person buying any such commodity for sale at retail shall be considered a dealer until the invoice cost of his purchases of perishable agricultural commodities exceeds $230,000 in any calendar year. *Id.*

As defined by the Secretary of Agriculture, the above phrase "wholesale or jobbing quantities" refers to an aggregate quantity of any type of produce totaling one ton (2,000 pounds) or more in weight in any day shipped, received, or contracted to be shipped or received. 7 C.F.R. § 46.2 (2004).

In support of its summary judgment motion, Consumers produced an affidavit by its chief of operations along with supporting documents which purport to show that, on July 6, 2001, debtor purchased and received 3,614.50 pounds of produce from Consumers. From this Consumers would have us infer that debtor unquestionably was a "dealer" under PACA. We are not able to so infer at this stage of the case.

In his brief in opposition to Consumers' summary judgment motion, debtor asserts that he is neither licensed nor subject to licensor as a dealer under PACA. He also denies in his brief that he ever received a shipment of produce exceeding one ton on any given day.

Because these averments are made only in debtor's brief, they have no evidentiary force and do not suffice to raise a genuine issue as to whether debtor qualifies as a "dealer" for purposes of PACA, in particular §§ 499a(b)(6) and 499e(c)(2). Legal memoranda and oral argument are not evidence and, without more, cannot create a factual dispute sufficient to defeat a summary judgment motion. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1372 (3d Cir.1996) (citing *Jersey Central Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109, (3d Cir.1985), *cert. denied*, 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986)).

The inadequacy of this response by debtor not withstanding, we are unwilling to enter summary judgment in favor of Consumers for a couple of reasons.

The sole date cited to by Consumers on which debtor received more than one ton of produce was July 6, 2001, at least fifteen months *prior* to the shipments of produce at issue in this adversary action—i.e., from October 24, 2002, through February 5, 2003. Consumers offered no evidence that debtor ever received this much produce on any *other* single day.

■ According to PACA, one holds the produce received and accounts receivable or proceeds derived from their sale *in trust* "until full payment of the sums owing in connection with such transactions has been received by the unpaid supplier or seller". 7 U.S.C. § 499e(c)(2). The language of this provision indicates that the trust so arising ceases to exist once payment in full is received by the supplier or seller. Consumers has neither has asserted nor produced any evidence showing that debtor never paid for the produce he received on July 6, 2001. Moreover, Consumers did not produce any evidence showing that debtor received one ton or more of produce on any other day or, if he did, that debtor never paid for it.

This is not the end of the matter. There is yet another reason why Consumers' summary judgment motion must be denied.

Perhaps recognizing that the averments in his brief were insufficient, debtor awoke from his protracted slumber and subsequently submitted a supplemental response with a sworn affidavit attached thereto. They were submitted *after* the deadline for responding to Consumers' summary judgment motion had passed and on the eve of oral argument on Consumers' motion for summary judgment.

Counsel to debtor will not be lauded for submitting them late. To the contrary, we remind counsel that deadlines are to be met and that failure to adhere to them can have adverse consequences for counsel's client. For the sake of achieving justice, however, we reluctantly will "look the other way" this one time and will consider the untimely supplemental response and attached affidavit.

In his sworn affidavit, debtor states that he was not a "dealer" for purposes of PACA but instead was a retailer of wholesale goods. In addition, debtor states that he never purchased more than two thousand pounds of produce in any one day and never sold more than $230,000 worth in any given calendar year. The most he ever sold in any one year, debtor avers, amounted to less than $75,000.

By asserting that he never purchased more than one ton of produce in a single day, debtor obviously means to deny that he ever qualified as an individual engaged in buying or selling produce in "wholesale or jobbing quantities" as defined at 7 C.F.R. § 46.2, and consequently was never a "dealer" for purposes of PACA.

In addition, by denying that he ever sold more than $ 230,000 worth of produce in any given calendar year, we understand debtor to be averring, however inartfully, that he falls within the above-noted exception to who qualifies as a "dealer" found at § 499a(b)(6) of PACA.

In our estimation, these averments by debtor in his sworn affidavit give rise to a genuine issue concerning whether debtor was a "dealer" for purposes of PACA beginning on October 24, 2002, when debtor received the first shipment of produce for which he did not pay, and ending on February 5, 2003, when debtor received the last shipment of produce for which he did not pay.

The finder of fact—i.e., this court—may find debtor to be credible in this regard and conclude that for the reasons just stated he was not a "dealer"; alternatively, we may find him not credible and conclude that he was a "dealer" for purposes of PACA. We can make such a determination, however, only after the matter is tried and we have had an opportunity to consider all of the evidence and determine who was credible and who was not.

Because we are not in a position to infer at this time that debtor was such a "dealer", we conclude at this time that there is a genuine issue of material fact concerning Consumers' assertion that debtor committed a defalcation while acting in a fiduciary capacity by not paying for produce he received from Consumers'.