**In re Bruce A. RAISLEY, a/k/a Bruce Raisley, d/b/a Raisley Trucking, and Marcia L. Raisley, Debtors.**

**Commonwealth Land Title Insurance Company, Plaintiff,**

**v.**

**Bruce A. Raisley, a/k/a Bruce Raisley, d/b/a Raisley Trucking, and Marcia L. Raisley, Defendants.**

**Bankruptcy No. 01–31245–BM. Adversary No. 02–2147–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 3, 2003.

David W. Ross, Goehring, Rutter & Boehm, Pittsburgh, PA, for Plaintiff.

Cynthia Sychak–Berry, Butler, PA, for Debtors/Defendants.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff Commonwealth Land Title Insurance Company (hereinafter "Commonwealth") has brought this adversary action seeking a determination that a debt possibly owed to it by debtors in connection with title insurance policies it issued for property debtors sold to third parties is excepted from discharge by § 523(a)(2)(A) of the Bankruptcy Code. Commonwealth maintains that debtors falsely represented to it that there were no judgments against them that might affect the property being sold.

Debtors steadfastly deny that all of the requirements for prevailing under § 523(a)(2)(A) are satisfied in this instance.

We find for reasons stated in this memorandum opinion that the debt in question is *not* excepted from discharge by § 523(a)(2)(A).

## FACTS

Commonwealth is licensed to do business in Pennsylvania. As its name suggests, it issues real estate title insurance policies.

Debtors, who are husband and wife, owned real property located at 203 Aspen Ridge Road in Portersville, Pennsylvania.

RE/MAX Metrocorp Realty Company and Stonebridge Real Estate commenced a civil suit against debtors in December of 1997 in the Court of Common Pleas of Butler County, Pennsylvania, in connection with debtors' sale of another parcel of real property located in Butler, Pennsylvania. The lawsuit eventually was heard by a panel of arbitrators, who issued a decision on June 26, 2001. The panel found in favor of RE/MAX and Stonebridge and against debtors in the amount of $22,800. The decision was promptly recorded in the judgment index maintained by the Prothonotary of the Court of Common Pleas of Butler County.

At some time prior to July 31, 2001, debtors agreed to sell the Portersville property to third parties for $178,500. Lawyers' Abstract Company (hereinafter "Lawyers'"), acting as Commonwealth's agent, conducted the closing on July 31, 2001.

Earlier that same day, both debtors executed a document captioned "OWNERS' OR SELLERS' AFFIDAVIT" at Lawyers' place of business. Paragraph 5 of the affidavit inquired whether there were any "unrecorded mortgages, notes, judgments or other instruments of indebtedness" outstanding against debtors as deponents which might affect the Portersville property. Debtors responded that there were "NONE".

Shortly before the closing, Lawyers' searched the judgment index maintained by the Prothonotary of the Court of Com-

mon Pleas of Butler County Butler County and found the above arbitration decision against debtors. For some unknown reason, Lawyers' concluded that the arbitration decision did not affect the Portersville property.

Because the settlement statement prepared for the closing made no provision for payment of the above arbitration award in favor of RE/MAX and Stonebridge, the award was not satisfied from the settlement proceeds. Even without payment of the award, the amount debtors owed after various deductions exceeded the sale price by $9,328. Debtors had to pay this amount to consummate the closing.

Commonwealth issued separate title insurance policies on August 1, 2001, to the purchasers of the Portersville property and to the mortgagee. The award in favor of RE/MAX and Stonebridge was not listed as an exclusion under either policy of insurance.

On August 10, 2001, RE/MAX and Stonebridge filed in the Court of Common Pleas of Butler County a praecipe for a judgment in the amount awarded by the panel of arbitrators in the decision of June 26, 2001. The Prothonotary entered a judgment in the amount of $22,8000 that same day.

Debtors filed a voluntary joint chapter 7 petition on November 2, 2001. The bankruptcy schedules identified RE/MAX and Stonebridge as having a secured claim in the amount of $22,800, the amount of the judgment against them. The schedules also identified Commonwealth and Lawyers' as having potential general unsecured claims in an "unknown" amount relating to the debt owed by debtors to RE/MAX and Stonebridge.

Counsel to RE/MAX and Stonebridge wrote a letter to Lawyers' on February 19, 2002, advising it of the arbitration award against debtors and demanding payment of the judgment. The demand to date has not been satisfied.

Commonwealth commenced this adversary action on March 19, 2002, seeking a determination that any debt owed to it by debtors in the event Commonwealth is responsible for satisfying the judgment in favor of RE/MAX and Stonebridge is excepted from discharge by § 523(a)(2)(A) of the Bankruptcy Code. It alleged in the complaint that debtors had falsely represented that the Portersville property was not affected by any judgments or other outstanding instruments of indebtedness.

The matter was tried on December 16, 2002, at which time both sides were given an opportunity to call witnesses and to offer evidence on the issues in the case.

## DISCUSSION

Commonwealth seeks a determination that the debt potentially owed to it by debtors is excepted from discharge by 11 U.S.C. § 523(a)(2)(A), which provides in part as follows:

(a) A discharge under section 727 … of this title does not discharge any individual debtor from any debt—….

(2) for money,… to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud.

The gravamen of Commonwealth's cause of action is that debtors falsely represented in their answer to paragraph 5 of the owners' affidavit they executed on July 31, 2001, that there were no judgments or other instruments of indebtedness outstanding against them which might affect the Portersville property.

To prevail under § 523(a)(2)(A), Commonwealth must establish the following elements: (1) a misrepresentation, fraudulent omission or deceptive conduct

by debtors; (2) knowledge on debtors' part of the falsity or deceptiveness of their statement or conduct; (3) an intent on debtors' part to deceive; (4) justifiable reliance by it on debtors' statement or conduct; and (5) damage to Commonwealth proximately caused by its reliance on debtors' statement or conduct. *See Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 (9th Cir.2001). Commonwealth must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). The various exceptions to discharge found at § 523(a) are to be strictly construed in favor of the debtor and against the objector. *U.S. v. Fegeley (In re Fegeley)*, 118 F.3d 979, 983 (3d Cir. 1997).

■ We note preliminarily that we seriously question whether Commonwealth has established *any* of the above first three requirements by a preponderance of the evidence presented in this case.

To begin with, it is questionable whether the first requirement—i.e., a false representation or fraudulent omission or deceptive conduct—is present in this case. The affidavit debtors executed on July 31, 2001, in connection with the closing unquestionably does not qualify as a mortgage or a note. Moreover, it is questionable whether the arbitration decision and award of June 26, 2001, qualifies as a judgment of any sort. A judgment based on the arbitration decision was not entered until August 10, 2001, ten days *after* debtors executed the affidavit and the closing was consummated. Arguably no judgment existed when debtors executed the affidavit. Finally, we have no clear idea what the phrase "other instrument of indebtedness outstanding against deponent" includes and consequently are reluctant to conclude that the decision and award of the arbitration panel falls within its scope.

Because of this, we also are reluctant to conclude that Commonwealth has established the second and third requirements—i.e., that debtor *knew* that the representation was false or misleading or that they thereby *intended* to deceive Commonwealth—by a preponderance of the evidence presented in this case.

Resolution of this case does not, however, depend on a determination that Commonwealth has failed to establish any of these three requirements by a preponderance of the evidence. Even if it has established them, Commonwealth cannot prevail because the evidence clearly indicates that it did *not* rely at all, let alone justifiably, on debtors' response to paragraph 5 of the above affidavit. The fourth of the above requirements, in other words, is absent in this case.

We previously noted that Lawyers', acting as Commonwealth's agent, searched the judgment index maintained by the Prothonotary of the Court of Common Pleas of Butler County immediately prior to conducting the closing to determine for itself whether there were any outstanding judgments or liens which might adversely affect debtors' interest in the Portersville property. It discovered the June 26, 2001, decision and award of the arbitration panel and, for reasons that are not part of the record, concluded that the decision and award had no affect on the Portersville property.

Commonwealth's decision to conduct for itself a search of the judgment index prior to the closing leads us to conclude that it did *not* rely at all on debtors' response to paragraph 5 of the affidavit to determine whether there were any judgments or liens affecting debtors' interest in the Portersville property. Commonwealth issued title insurance policies to the purchasers of the property and to their mortgagee only after

conducting its own search and satisfying itself that were no such judgments or liens. It instead relied upon *its own investigation* when it decided to issue the title insurance policies. Commonwealth, we believe, would not have conducted its own search of public records had it actually relied on debtors' response.

The matter does not end there. It also follows that Commonwealth has not established the fifth of the above requirements—i.e., that it suffered an injury that was proximately caused by its justifiable reliance upon debtors' response to paragraph 5 of the affidavit. Any injury it may have suffered was due to reliance upon its own conclusion after searching public records that the decision and award of the arbitration panel did not affect the Portersville property. The injury was not due to any reliance it reposed in debtors' response to paragraph 5 of the affidavit.

We conclude in light of the foregoing that Commonwealth has not demonstrated that any debt owed to it by debtors in connection with the title insurance policies it issued for the Portersville property is excepted from discharge by § 523(a)(2)(A) of the Bankruptcy Code.