### In re Michael L. SCOTT, Debtor.

### Kathleen Heer and Loretta A. Lavrich, Plaintiffs,

v.

### Michael L. Scott, Defendant.

**Bankruptcy No. 01–28372–BM.**
**Adversary No. 02–2090–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

June 16, 2003.

*Sylk,* 331 F.Supp. 661 and *Callaway,* 231 F.3d 106.

622

Samuel R. Grego, DKW Law Group, Inc., Pittsburgh, PA, for Plaintiff.

Rodney D. Shepherd, Pittsburgh, PA, for Defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiffs in this adversary action assert that a debt owed to them by debtor is excepted from discharge by §§ 523(a)(2), (a)(4) and/or (a)(6) of the Bankruptcy Code. They alternatively assert that debtor should be denied a general discharge in accordance with § 727(a)(2).

Debtor denies that the debt is excepted from discharge and insists that he is entitled to a general discharge.

We find that the debt is dischargeable and that debtor is entitled to a general discharge and therefore will enter judgment in favor of debtor and against plaintiffs.

## — FACTS —

Plaintiffs owned and operated as partners a photo lab and retail store known as K–Lor Photo Lab. It was located in a strip mall in Monroeville, Pennsylvania. Plaintiffs and debtor executed an asset purchase and sale agreement on October 13, 2000, whereby debtor agreed to purchase all of the assets of K–Lor for $115,000. The closing took place that same day.

Debtor paid $30,000 of the purchase price at the closing. The parties agreed that $80,500 of the purchase price would be allocated to K–Lor's furniture, fixtures, machinery and equipment. The remaining $30,500 was allocated its goodwill, customer lists, and the like.

Concurrently with the execution of the asset purchase and sale agreement, debtor also executed a promissory note in favor of

plaintiffs in the amount of $85,000, the unpaid principal balance of the purchase price, plus interest at the rate of nine percent per annum on the unpaid balance. Debtor was obligated to make sixty equal monthly installment payment in the amount of $1,764.46. The first installment was due on November 1, 2000, and the last on October 1, 2005.

To secure payment of the remainder of the purchase price, debtor also executed a security agreement granting plaintiffs a security interest in all of the furniture, fixtures, equipment, machinery, inventory and other assets of the business. Plaintiffs duly perfected the security interest shortly thereafter.

Paragraph 2 of the security agreement provided that the collateral would be kept at K–Lor's place of business. It further provided that debtor would notify plaintiffs in writing prior to moving the collateral to another location and would not remove the collateral from the county in which it was located without their prior written consent. Paragraph 7 of the security agreement provided that debtor would not transfer any of the collateral to another person or entity without plaintiff's prior written consent.

The parties also executed a lease addendum at the closing whereby the landlord released plaintiffs from their obligations under the lease and the remainder of the lease term was transferred to debtor.

Debtor began experiencing significant financial problems in operating the business almost immediately after taking over the reins of K–Lor. He notified plaintiffs in mid-November of 2000 that he would attempt to find a third party to purchase the business from him.

Debtor made only four of the installment payments required under the promissory note. The last payment occurred on February 1, 2001. He contacted plaintiffs and told them that "business was slow" when he could not make the installment payment due on March 1, 2001. Plaintiffs were aware of the cyclical nature of the business and were not alarmed when debtor could not make the payment.

Debtor informed plaintiffs late in March of 2001 that his efforts to locate a buyer of the business to that point in time had been unsuccessful. He told them that he might have to file for bankruptcy if one was not found in the near future.

Debtor also defaulted on his lease obligations. The last rental payment occurred in March of 2001. He informed the landlord in April of 2001 that he might have to file for bankruptcy. Debtor had no further discussions with the landlord after that. The landlord subsequently obtained a judgment against debtor for unpaid rent late in April of 2001.

Debtor closed down K–Lor for good on or about May 11, 2001. He contacted neither plaintiffs nor the landlord beforehand to advise them of the closing or to discuss the disposition of the machinery and equipment for processing photographs left at the site. He did, however, contact plaintiffs on May 12, 2001, and informed them that he had closed the business and anticipated filing a bankruptcy petition sometime in the near future. This was the last contact he had with plaintiffs.

The landlord entered the leasehold premises some time after May 11, 2001, and changed the locks on the doors with the intention of preparing it for occupancy if he found another tenant for the space.

After entering and retaking the premises, the landlord called plaintiffs on at least two occasions to inquire what they intended to do with their collateral. Plaintiffs never returned the calls. The landlord was, however, contacted by an individual

who identified himself as plaintiffs' attorney, who said he would call back after finding out what plaintiffs wanted to do about their collateral. He never got back to the landlord about the matter.

Faced with having to decide for himself what to do with plaintiffs' collateral, the landlord attempted to find a buyer for it but had no luck because the machinery and equipment was old and fast approaching obsolescence. He finally sold a portion of the collateral to a photography enthusiast for $1,000 and sold a portion of it as scrap metal for an undetermined amount. The remainder was thrown out with the trash.

Debtor filed a voluntary chapter 7 petition on August 13, 2001. The accompanying schedules identified plaintiffs as having an undisputed general unsecured claim in the amount of $85,000 for "personal guarantee for business loan".

K–Lor, Inc, which debtor incorporated some time after October 13, 2000, filed a voluntary chapter 7 petition on September 19, 2001. Its schedules listed plaintiffs as having an undisputed secured claim in the amount of $79,280.04 for "purchase of business".

Plaintiffs discovered at some time in June of 2001 that their collateral had "disappeared". They attended debtor's § 341 meeting, which was held on October 26, 2001, to learn of its whereabouts and were told by debtor that he did not know.

Plaintiffs commenced this adversary action against debtor on February 19, 2002. In it they seek a determination that the debt owed to them by debtor is excepted from discharge by §§ 523(a)(2), (a)(4) and/or (a)(6). They alternatively seek to have debtor denied a general discharge according to § 727(a)(2).

The matter was tried on April 21, 2003, at which time both sides were given an opportunity to present evidence on the issues raised in the case.

## — DISCUSSION —

### Objection To Discharge Of Debt

Plaintiffs seek a determination in the first three counts of the complaint that the debt owed to them by debtor is excepted from discharge by §§ 523(a)(2)(A), (a)(4) and/or (a)(6), respectively, which provide in part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—....

(2) for ... property ... to the extent obtained, by fraud, other than a statement respecting the debtor's or an insider's financial condition;...

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;... [and]

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

11 U.S.C. § 523(a).

The remedial purpose of the Bankruptcy Code is "to provide a procedure by which insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life [and] a clear field for future effort, unhampered by the pressure and discouragement of pre[-]existing debt". *United States v. Fegeley (In re Fegeley)*, 118 F.3d 979, 982 (3d Cir.1997) (quoting *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991)).

This "fresh start" policy applies, however, only to the "honest but unfortunate debtor". *Grogan*, 498 U.S. at 286–87, 111 S.Ct. at 659. Bankruptcy is intended to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh". *Boston Univer-*

*sity v. Mehta (In re Mehta),* 310 F.3d 308, 311 (3d Cir.2002).

Bankruptcy is not only an "ameliorative right" of the debtor; it also is a remedy for creditors. *Id.* Protecting creditors under certain circumstances becomes more important than giving a debtor a "fresh start". *Id.* Accordingly, a debtor may not be permitted in every instance to "escape all financial obligations" by the mere expedient of bankruptcy. *Id.* Exceptions to discharge are, however, generally construed "narrowly against the creditor and in favor of the debtor" due to this underlying concern for providing a "fresh start". *Id.*

A creditor objecting to the discharge of a debt owed to it by a debtor in bankruptcy has the burden of proving, by a preponderance of the evidence, that the debt falls into one of the numerous exceptions found at § 523(a) of the Bankruptcy Code. *Grogan,* 498 U.S. at 291, 111 S.Ct. at 661.

### Count I: § 523(a)(2)(A)

Plaintiffs assert in Count I of the complaint that debtor falsely and fraudulently represented to them prior to the closing that he intended to continue operating K–Lor as a going concern after the closing when in reality he purchased the business with the intention of immediately reselling it to a third party. Debtor began looking for a buyer for the business only a month after he purchased it from plaintiffs.

Plaintiffs must establish each of the following requirements by a preponderance of the evidence if they are to prevail under § 523(a)(2)(A): (1) a misrepresentation, fraudulent omission, or deceptive conduct by debtor: (2) knowledge on debtor's part of the falsity or deceptiveness of the statement or conduct; (3) an intent on debtor's part to deceive plaintiffs; (4) jus-

tifiable reliance by plaintiffs on debtor's statement or conduct; and (5) damage to plaintiffs proximately caused by their reliance. *See Commonwealth Land Title Insurance Co. v. Raisley (In re Raisley),* 287 B.R. 639, 641–42 (Bankr.W.D.Pa.2003).

Although § 523(a)(2)(A) does not expressly so provide, the false representation must be material. An untruth is material for purposes of § 523(a)(2)(A) if it is considered important enough to influence a creditor's decision to extend credit. *Insurance Company of North America v. Cohn (In re Cohn),* 54 F.3d 1108, 1114 (3d Cir.1995). Moreover, the perpetrator of the falsehood must intend to deceive the party to whom it is directed. "Common sense would balk" were it otherwise. *Field v. Mans,* 516 U.S. 59, 68, 116 S.Ct. 437, 442–43, 133 L.Ed.2d 351 (1995).

Intent to deceive may be determined from the totality of the circumstances of a case and may be inferred when the facts and circumstances present a picture of deceptive conduct on the debtor's part. *Gordon v. Bruce (In re Bruce),* 262 B.R. 632, 636 (Bankr.W.D.Pa.2001).

The creditor's reliance need not be reasonable; it need only be justifiable. *Field,* 516 U.S. at 68, 116 S.Ct. at 442–43. The falsity of a representation or pretense need not be so "well crafted" as to be virtually undetectable before a creditor's reliance upon it is justifiable for purposes of § 523(a)(2)(A). Reliance may be justifiable even though its falsity would have been detected had there been an investigation. *Id.,* 516 U.S. at 69, 116 S.Ct. at 444. A buyer's reliance upon the representation of a seller of land that it is unencumbered, for instance, may be justifiable even though the buyer could have walked across the street to the courthouse and easily learned of an unsatisfied mortgage lien against the property. *Id.* Con-

tributory negligence is no bar to recovery to an intentional tort. *Id.*

 Justifiability does not, as in the case of reasonableness, depend on a community standard that applies to all cases. It instead depends on the qualities and characteristics of the particular individual who relies on a particular representation. *Id.*, 516 U.S. at 71, 116 S.Ct. at 444. This does not mean that justifiability has no bounds or limits. One must "use his senses" and cannot recover if he "blindly relies" on a misrepresentation whose falsity would be "patent" to him if he utilized the opportunity to make a "cursory" examination or investigation. *Id.* Reliance is not justifiable for purposes of § 523(a)(2)(A), in other words, if the falsity of the representation would be obvious after a cursory examination.

██ Plaintiffs have established none of the required elements of § 523(a)(2)(A) by a preponderance of the evidence.

To begin with, plaintiffs offered no credible evidence at trial establishing that debtor ever represented, either by word or deed, prior to the closing that he intended to continue operating K–Lor as a going concern once he took it over. Even if debtor did so represent, plaintiffs offered no credible evidence which would indicate that the representation was false *when it was made.* The fact that debtor began searching for a buyer shortly after the closing does not, under the circumstances of this case, compel the conclusion that he did not intend prior to the closing to operate K–Lor as a going concern. It is as likely that debtor quickly came to realize after taking the reins of K–Lor that he had bought "a pig in a poke" and had a change of heart at that time about operating the business as a going concern as it is likely that debtor had no such intention prior to the closing.

It follows as a matter of logic from their failure to establish the first of the above required elements of § 523(a)(2)(A) that plaintiffs also failed to establish any of the remaining elements. Each of the other elements presupposes the presence of a false representation, fraudulent omission, or deceptive conduct on the debtor's part. Without it the remaining elements cannot be satisfied.

The matter does not end there. Plaintiffs failed to establish the remaining required elements even if debtor did falsely represent that he intended to continue operating the business as a going concern after the closing occurred. They failed, for instance, to establish the materiality of this falsehood. Plaintiffs did not explain how or why this false representation influenced their decision to sell the business to debtor on a credit basis.

In addition, plaintiffs failed to establish that debtor *knew* the representation was false when he so represented. We noted previously that one could justifiably conclude based on the evidence presented at trial that debtor realized the representation was false and experienced a change of heart only *after* taking over the reins of the business and coming to realize that he could not afford to continue operating it. Until then debtor had every intention of operating K–Lor as a going concern. Such a conclusion in our estimation is as consistent with the evidence, if not more so, than the conclusions that debtor knew all along that the representation was false and that he made the representation with intent to deceive plaintiffs.

Plaintiffs also failed to establish the fourth and fifth required elements of § 523(a)(2)(A). They failed to establish that they relied at all, let alone justifiably, on the alleged representation in deciding to sell K–Lor to debtor on credit and to accept a promissory note from him for the

unpaid balance of the purchase price. No evidence was offered at trial to support this inference. Finally, because they failed to establish that they relied at all on such a representation, plaintiffs also failed to establish that they suffered any injury which was proximately caused by their reliance.

### Count II: § 523(a)(4)

Plaintiffs assert in Count II of their complaint that debtor was acting as a fiduciary with respect to their collateral because the security agreement he executed at the closing imposed an obligation on him to preserve the above collateral for their benefit. They further maintain that debtor committed fraud or defalcation while acting as a fiduciary and seek a determination that the debt owed to them by debtor therefore is excepted from discharge by § 523(a)(4).

To prevail under this theory, plaintiffs must prove that: (1) debtor was acting in a fiduciary capacity; and (2) debtor committed fraud or defalcation while acting in that capacity. *Subich v. Verrone (In re Verrone)*, 277 B.R. 66, 71 (Bankr.W.D.Pa.2002).

The cause of action asserted in Count II is without merit. Debtor was *not* acting in a fiduciary capacity vis-à-vis plaintiffs and their collateral.

Determining whether debtor was acting in a fiduciary capacity depends on federal law rather than state law. *In re Verrone*, 277 B.R. at 71. The concept of fiduciary is narrower for purposes of § 523(a)(4) than it is under the common law. One may, in other words, qualify as a fiduciary under the common law without so qualifying for purposes of § 523(a)(4). *In re Verrone*, 277 B.R. at 71–72.

The concept of fiduciary is limited for purposes of § 523(a)(4) only to situations in which an express or technical trust exists. *E.g., Matter of Tran*, 151 F.3d 339, 342 (5th Cir.1998); *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338–39 (5th Cir. 1980). Constructive or *ex maleficio* trusts do not qualify. *Matter of Tran*, 151 F.3d at 342; *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir.1996).

We must look to state law to determine whether the requisite sort of trust existed. *In re Lewis*, 97 F.3d at 1185; *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986). The following must be present for an express or technical trust to exist in this case: (1) an express intention to create a trust; (2) an ascertainable *res*; (3) a sufficiently certain beneficiary; and (4) a trustee who owns and administers the *res* for the benefit of the beneficiary. *First Options of Chicago, Inc. v. Kaplan*, 162 B.R. 684, 705 (Bankr.E.D.Pa.1993).

These required elements are not present in this case. There is nothing in the record to indicate that plaintiffs and debtor ever intended to create a trust with respect to the collateral; that plaintiffs were the intended beneficiaries of that trust; or that debtor owned the collateral only as a trustee would and administered it for the benefit of plaintiffs.

It is clear from the evidence presented at trial that we have here a garden-variety debtor-creditor relationship wherein the debtor granted the creditor a security interest in items debtor purchased from the creditor for his own use and benefit. Debtor purchased the collateral from plaintiffs for his use in operating K–Lor. He did not own and administer the collateral for the benefit of plaintiffs as beneficiaries of any sort. If their relationship amounts to an express or technical trust, every standard debtor-creditor relationship involving a security interest in collateral would seem to qualify as an express or technical trust. This is patently absurd.

Having concluded that debtor was not acting in a fiduciary capacity with respect to plaintiffs and their collateral, we need not consider whether debtor committed fraud or defalcation for purposes of § 523(a)(4).

### Count III: § 523(a)(6)

Plaintiffs assert in Count III of their complaint that debtor willfully and maliciously abandoned their collateral when he closed K–Lor down on May 11, 2001. They maintain that debtor made no effort to deliver their collateral to them or to alert them that he had abandoned it and that as a consequence the landlord eventually disposed of it. According to plaintiffs, the debt owed to them by debtor is excepted from discharge by § 523(a)(6) of the Bankruptcy Code.

Count III is without merit.

It should be noted at the outset that plaintiffs' description of events is not accurate. Contrary to what plaintiffs assert, debtor telephoned them on May 12, 2001, the day after K–Lor ceased operating, to inform them that K–Lor had shut down for good. We do not know whether debtor specifically said anything about the collateral, but the conversation unquestionably put plaintiffs on notice that they needed to take action to protect and reclaim their collateral.

The landlord also contacted plaintiffs on at least two occasions after re-entering and re-taking possession of the premises to inquire what they intended to do with their collateral. Plaintiffs did not personally get back to the landlord, but an individual who identified himself as their attorney contacted the landlord and said he would get back to him after finding out from plaintiffs what they wanted to do about their collateral. He never got back to the landlord with the information.

To summarize, it is incorrect to conclude, as plaintiffs would have it, that debtor somehow was responsible for the loss of their collateral Plaintiffs were not kept in the dark about the status of their collateral and were given ample notice that they needed to take action to protect their collateral. For reasons that are not apparent from the record, plaintiffs sat back and took no action whatsoever. Responsibility for the loss of their collateral, in other words, does not lie with debtor. By its express terms, however, § 523(a)(6) applies only to willful and malicious injury *by the debtor* to another person or entity or to its property.

It is not sufficient for purposes of § 523(a)(6) that debtor *acted* intentionally and that a resulting injury was negligently or recklessly inflicted upon another person or entity or its property. *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998). The phrase "willful and malicious" modifies the word "injury". This indicates that § 523(a)(6) requires a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that results in injury. *Id.*, 523 U.S. at 61, 118 S.Ct. at 977.

Plaintiffs have not established that debtor intentionally injured them or their property. They have not explained how we can infer from the evidence presented at trial that debtor intended to injure them or their property when he closed down K–Lor, left plaintiffs' collateral at the leasehold premises, and then informed them the very next day that K–Lor had closed for good. The most that can be said about debtor is that he *acted* intentionally and that injury to plaintiffs or their collateral resulted.

Aside from holding that a debtor must intend to injure another person or entity or its property, the Supreme Court did not specify in *Geiger* the precise state of mind

needed to satisfy the willful and malicious injury requirement of § 523(a)(6). *See Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1207 (9th Cir.), *cert. denied*, 533 U.S. 930, 121 S.Ct. 2552, 150 L.Ed.2d 718 (2001).

*Post–Geiger* appellate court decisions appear to follow either of two approaches to this issue, one subjective and the other objective.

Under the subjective approach, an injury is willful for purposes of § 523(a)(6) only if the debtor subjectively intended to cause injury or subjectively believed that harm was a substantially certain consequence of his or her actions. *See In re Jercich*, 238 F.3d at 1208; *Via Christi Regional Medical Center v. Englehart (In re Englehart)*, 2000 WL 1275614, *2–3 (10th Cir.2000); *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 .n. 10 (6th Cir.1999). Emphasis is placed under this approach on the debtor's knowledge or belief concerning the consequences of his or her actions. *In re Englehart*, 2000 WL 1275614 at *2.

According to the so-called objective approach, an injury is willful for purposes of § 5323(a)(6) only if the debtor subjectively intended to cause injury or there was an objective substantial certainty of injury as a consequence of his or her actions. *See Matter of Miller*, 156 F.3d 598, 604 (5th Cir.1998), *cert. denied*, 526 U.S. 1016, 119 S.Ct. 1249, 143 L.Ed.2d 347 (1999). Emphasis is placed under this approach on the assessment by the finder of fact of the likelihood of injury instead of the debtor's knowledge or belief. *In re Englehart*, 2000 WL 1275614 at *3.

■ The Third Circuit has not visited this issue since *Geiger* was decided. In a 1994 decision, however, It articulated a standard which seems to retain its vitality even though it pre-dates *Geiger*. The Third Circuit appears to have adopted the so-called objective approach in *Conte v. Gautam (In re Conte)*, 33 F.3d 303 (3d Cir. 1994). Actions are willful and malicious for purposes of § 523(a)(6), it held, "if they either have a purpose of producing injury or have a substantial certainty of producing injury". *Id.*, 33 F.3d at 307. This formulation is more reminiscent of the standard articulated in *Matter of Miller* than it is of the standard articulated in *In re Jercich.*

■ Applying the so-called objective approach, we conclude that plaintiffs did not establish that debtor had the requisite state of mind for purposes of § 523(a)(6). In addition to offering no evidence at trial showing that debtor subjectively intended to injure them or their property when he closed down K–Lor and left their collateral behind, plaintiffs failed to establish that there was a substantial certainty of harm occurring as consequence of his actions. Debtor, we have noted, informed plaintiffs of his actions the day after he closed down K–Lor for good, thereby putting them on notice that they should take steps to protect their collateral. It is reasonable to expect a prudent secured party to thereafter take action to protect its collateral. There was no good reason to expect that plaintiffs would do nothing and by default would effectively allow the landlord to dispose of their collateral.

The outcome is no different if we apply the so-called subjective approach to the facts of this case. Plaintiffs not only failed to show that debtor subjectively intended to injure them or their property, they also failed to establish that he subjectively knew or believed that plaintiffs or their collateral would be inured as a consequence of his actions. It is highly improbable that debtor believed plaintiffs would do nothing and allow their collateral to be

disposed by the landlord after he informed of K–Lord's closing.

We conclude in light of the foregoing that plaintiffs have failed to demonstrate that the debt owed to them by debtor should be excepted from discharge by §§ 523(a)(2)(A), (a)(4), or (a)(6).

### Objection To General Discharge

Plaintiffs assert in Count IV of the complaint that, with intent to hinder, delay, or defraud his creditors, debtor abandoned or transferred their collateral to the landlord less than a year prior to his bankruptcy filing by leaving it behind when he closed K–Lor. They argue that debtor therefore should be denied a general discharge in accordance with § 727(a)(2)(A), which provides in part as follows:

(a) The court shall grant a debtor a discharge, unless—. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor ..., has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the estate, within one year before the date of the filing of the petition; . . .

11 U.S.C. § 727(a)(2)(A).

Section 727(a) should be construed liberally in favor of a debtor in bankruptcy and against a party objecting to the debtor's discharge. Applying one of the exceptions to discharge is an extreme measure and must not be lightly undertaken. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993).

A party objecting to a debtor's discharge has burden of proving that the case falls within one of the exceptions enumerated at § 727(a). The objector must prove facts essential to that particular exception. *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir.1992).

The exception to discharge found at § 727(a)(2)(A) is comprised of two basic components: an act—e.g., a transfer or concealment—, and an improper motive—i.e., a subjective intent to hinder, delay or defraud a creditor. *Rosen*, 996 F.2d at 1531. A creditor objecting to the debtor's discharge must establish the presence of both of these components during the one-year period preceding the bankruptcy; anything occurring outside of this window is "forgiven". *Id.*

To prevail under § 727(a)(2)(A) in this case, plaintiffs must prove that: (1) the debtor; (2) transferred; (3) debtor's property; (4) with intent to hinder, delay, or defraud a creditor; (5) within one year prior to the bankruptcy filing. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir.2002).

The required intent must be actual; constructive fraud will not suffice. *Groman v. Watman (In re Watman)*, 301 F.3d 3, 8 (1st Cir.2002). Because actual intent ordinarily is difficult to prove directly, it may be inferred from circumstantial evidence. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 684 (6th Cir.2000).

Plaintiffs have proved neither of the above basic components of § 727(a)(2)(A). They have not established by a preponderance of the evidence that debtor *transferred* any of his property or his interest therein to the landlord. Nor have they established that plaintiff did so with *intent* to hinder, delay or defraud his creditors, in this instance plaintiffs.

For purposes of the Bankruptcy Code, "transfer" means:

... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property. . . .

11 U.S.C. § 101(54).

We previously determined that the landlord disposed of the machinery and equip-

ment owned by debtor in which plaintiffs have a security interest. He sold some of it to a photography enthusiast, sold some as scrap metal, and threw out the rest with the trash.

Circumstances indicate that debtor did not "part" with these items, as the term is defined at § 101(54). Debtor contacted plaintiffs the day after K–Lor closed to inform them of the closing. In so doing he intended, among other things, to notify plaintiffs that they should take action to reclaim and retrieve their collateral. When plaintiffs failed to take such action, the landlord engaged in self-help and unilaterally disposed of the items comprising their collateral. Debtor intended to turn the items over to plaintiffs, not to the landlord.

Plaintiffs have not established that the landlord distrained the above items for unpaid rent pursuant to 68 P.S. § 250.302 (Purdon's 2003). Had they done so, we might be inclined to conclude that debtor effectively transferred the items to the landlord, albeit involuntarily. No evidence was offered at trial showing that the landlord provided debtor with the required written notice, stating the cause of such taking and specifying the date of levy and the personal property involved. Without such evidence we do not view the actions of the landlord concerning the collateral as constituting a transfer of debtor's property to the landlord.

Perhaps recognizing that a transfer as defined at § 101(54) did not occur, plaintiffs waffle somewhat and assert that what transpired amounted to an abandonment *or* transfer of the collateral.

Section 727(a)(2)(A) makes no mention of abandonment.

Moreover, we do not view what occurred as an abandonment of the collateral on debtor's part. Debtor reasonably expect-

ed plaintiffs to come forward and reclaim their collateral after he notified them of K–Lor's closing. When they failed to do so, the landlord engaged in self-help. Even if debtor did abandon the collateral, we do not view his conduct as falling within the confines of the term "transfer" as defined at § 101(54). Plaintiffs have cited to no authority for the proposition that a debtor's abandonment of property or an interest therein constitutes a transfer for purposes of § 101(54). Our own research has uncovered no such authority.

Finally, it follows from what we have already determined that debtor also lacked the requisite intent to hinder, delay, or defraud plaintiffs or any other of his creditors. The second basic component of § 727(a)(2)(A) presupposes that debtor transferred his property or an interest therein to someone else. We have determined that no such transfer occurred.

Even if such a transfer occurred, the requisite intent was lacking. We have determined that debtor notified plaintiffs that K–Lor had closed and that he reasonably expected plaintiffs to take action to reclaim their collateral. Such notification does not square with the notion that debtor acted with the state of mind required by § 727(a)(2)(A).

Based on the foregoing, we conclude that the facts of this case do not warrant denying debtor a discharge pursuant to § 727(a)(2)(A).